UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY JOHN FIDELDY, | No. 2:18-cv-02668 CKD |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1959, applied on August 30, 2013 for SSI, amending to allege disability beginning August 30, 2013. Administrative Transcript ("AT") 15, 26. Plaintiff alleged he was unable to work due to diabetes, depression, spinal stenosis, and other physical and mental impairments. AT 238. He reported upon reconsideration that his back pain had gotten worse as

of December 2013. AT 281. In a decision dated September 6, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 15-28. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since August 20, 2013, the amended alleged onset date.
>
> 3. The claimant has the following severe impairments: lumbar spinal stenosis, major depressive disorder, and unspecified anxiety state.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except with the following limitations: can lift, carry, push, and pull 25 pounds frequently and 50 pounds occasionally; can do simple, routine, and repetitive tasks but not at a production rate that is determined by external forces such as a quota or assembly line; and can have occasional public contact, meaning one-to-one interaction, but can work in the proximity of the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on xx/xx/1959 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2013, through the date of this decision.

AT 17-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred by finding plaintiff's obesity a non-severe impairment; (2) the ALJ improperly weighed the medical opinion evidence; and (3) the ALJ erred in discounting plaintiff's subjective symptoms.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Non-Severe Impairment

Plaintiff asserts that the ALJ erred by finding plaintiff's obesity to be a non-severe impairment at step two of the sequential evaluation. He asserts that this error "created a 'ripple effect' of errors, namely a legally insufficient RFC finding and denial of benefits based on that deficient RFC." (ECF No. 14-2 at 13.)

Discussing this issue at step 2, the ALJ wrote:

> The record further reflects that the claimant was diagnosed with obesity. The claimant's weight was documented in medical records from a low of 234 pounds to a high of 345 pounds. At a reported height of 5'9", the claimant's body mass index ("BMI") was in the range of 34.6 to 50.9 [noting that a BMI of 30 or above is classified obese]. I have considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p. However, there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. Therefore, the claimant's obesity is not a severe impairment. The claimant's weight, including the

4

> impact on his ability to ambulate as well as his other body systems, has been considered within the limitations of the claimant's residual functional capacity described below.

AT 18-19.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

As the Ninth Circuit explained in Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (Internal quotes and

citations omitted.)

Here, the RFC limited plaintiff to medium work with limitations on lifting, carrying, pushing, and pulling. AT 20. In the activities of daily living, the ALJ noted that plaintiff "reported difficulty doing laundry and other household chores." AT 19. The ALJ also noted plaintiff's statements that he had difficulty lifting and carrying, walking for more than 15 minutes at a time, standing or sitting for long periods, and performing postural activities, and that plaintiff's wife's third-party function report was "overall consistent" with these subjective statements. AT 21.

As to the medical evidence, the ALJ noted that physical examinations of plaintiff from June 2013 through March 2016 "consistently documented" normal range of motion, muscle strength testing of 5/5 throughout, normal gait, and intact sensation. AT 21-22. At a December 2013 consultative examination, at which he was diagnosed with obesity, plaintiff demonstrated "full range of motion in his spine and all joints, . . . negative straight leg raises, normal motor strength, intact sensation, and intact deep tendon reflexes." AT 22; see AT 386-392. Elsewhere in the decision, the ALJ noted that plaintiff's treatment records "reflect overall unremarkable clinical findings, including full range of motion and normal gait, and only occasional treatment with pain medication." AT 23 (record citations omitted).

The ALJ gave great weight to the opinions of two State agency medical consultants, Dr. J. Zheutlin and Dr. Robert Mitgang, both of whom reviewed plaintiff's medical records and opined that he did not have a severe physical impairment. AT 24. However, the ALJ found that "medium exertional work accommodates the claimant's subjective complaints." AT 24.

Plaintiff has not identified any specific obesity-related impairments that would result in a more limited RFC than the one arrived at by the ALJ, who found "no evidence of any specific or quantifiable impact [of obesity] on pulmonary, musculoskeletal, endocrine, or cardiac functioning." AT 19. Thus the undersigned finds no error based on the ALJ's finding that plaintiff's obesity was non-severe.

B. Medical Opinions

Plaintiff asserts that the ALJ improperly weighed the opinions of treating physician Dr.

Tanson and consultative examiner Dr. Ali. The undersigned considers these arguments in turn.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala , 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Tanson

Dr. Gabriel Tanson began treating plaintiff in November 2012. AT 515. On May 28, 2014, Dr. Tanson completed a medical source statement, listing plaintiff's diagnoses as chronic spinal stenosis and low back syndrome, morbid obesity, and diabetes mellitus. AT 515-519. Based on plaintiff's "chronic low back pain and spinal stenosis," Dr. Tanson opined that plaintiff could lift and carry up to 10 pounds occasionally and up to 20 pounds "less than occasionally"; could sit, stand, and walk for two hours in an eight-hour workday; and required a 15-minute break every

hour. AT 516-517. Dr. Tanson further opined that plaintiff could frequently balance and occasionally climb, stoop, crouch, kneel, and crawl; and was limited to occasional pushing/pulling and frequent reaching, handling, and feeling. AT 518. Dr. Tanson opined that the restricted activities "may aggravate low back pain." AT 519; see AT 24-25 (ALJ's summary of Tanson opinion).

Evaluating Dr. Tanson's opinion, the ALJ wrote:

> Dr. Tanson's opinion is given little weight. First, the opinion is inconsistent with Dr. Tanson's own treatment records which consistently reflect normal inspection and palpitation of the lumbar spine; no erythema, swelling, deformity, or tenderness; normal spine curves; no tests for nerve root disease; intact deep tendon reflexes; normal cerebellar function; negative Romberg; normal gait; and intact sensation.[2] Second the opinion is inconsistent with Dr. Tanson's course of treatment for the claimant's back pain which did not include taking any imaging studies, referring the claimant to specialists, or prescribing treatment such as physical therapy or epidural injections. Third, the opinion is inconsistent with Dr. Ali's findings and observations that the claimant was able to walk into the exam room without assistance; get on and off the exam table without difficulty; bend to take his shoes on and off without difficulty; perform heel and toe walk; squat; had full range of motion in his spine and all joints; negative straight leg raises; normal motor strength; intact sensation; and intact deep tendon reflexes.[3] Fourth, the opinion is inconsistent with the claimant's ability to attend to his hygiene independently, chop vegetables, and present for his medical appointments. For these reasons, I give Dr. Tanson's opinion little weight.

AT 25.

Plaintiff argues that these reasons were legally insufficient for the ALJ to reject the opinion of the treating physician. However, plaintiff does not dispute that Dr. Tanson's examination and treatment records showed largely normal findings and that plaintiff's treatment for back pain was conservative and routine. See Meanel, 172 F.3d at 1113 (treating physician's conclusory, minimally supported opinion rejected); Senko v. Astrue, 279 Fed. Appx. 509, 511 (9th Cir. May 22, 2008) (unpublished) (ALJ properly rejected treating doctor's opinion where

---

[2] See AT 394-395, 508 (Dr. Tanson's treatment and examination notes showing normal inspection and palpitation of the lumbar spine, normal range of motion, and 5/5 strength testing in all major muscle groups).

[3] See AT 386-392.

8

opinion was not supported by doctor's treatment notes, which showed claimant was "doing well on her medications"). While plaintiff's cited daily activities do not necessarily relate Dr. Tanson's opined restrictions, the ALJ provided other specific and legitimate reasons for discounting the opinion, supported by substantial record evidence referenced in the body of the decision. The undersigned finds no error on this basis.

2. <u>Dr. Ali</u>

Plaintiff next argues that the ALJ erred in giving only partial credit to the opinion of consultative examiner Dr. Ali. The ALJ evaluated Dr. Ali's opinion as follows:

> Consultative examiner Shahid Ali, M.D., Board Certified in Family Practice, performed a comprehensive internal medical evaluation of the claimant on December 20, 2013 at the request of this agency. At the time, the claimant's chief complaints were diabetes and low back pain. Dr. Ali observed that the claimant was able to walk into the exam room without assistance, sit comfortably, get on and off the exam table without difficulty, take his shoes on and off without difficulty, perform heel and toe walk, and squat. During a physical examination, Dr. Ali noted that the claimant weighed 333 pounds ... He also noted that the claimant had clear lungs, full range of motion in his spine and all joints, minimal paravertebral muscle spasm in the lower back, negative straight leg raises, normal motor strength, intact sensation, and intact deep tendon reflexes. Following this examination, Dr. Ali diagnosed the claimant with diabetes and obesity.
>
> . . .
>
> Following this examination, Dr. Ali opined that the claimant could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk for four hours; sit without limitation; occasionally climb; never balance, stoop, kneel, crouch, or crawl; and should avoid working around heights and heavy machinery.

AT 22, 23-24, citing AT 386-392. The ALJ gave Dr. Ali's opinion partial weight, crediting Dr. Ali's conclusions plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally and sit without limitation. AT 24. "However, the remainder of Dr. Ali's opinion is inconsistent with the evidence in the record as a whole and is given little weight," the ALJ wrote. AT 24. The resulting RFC does not incorporate Dr. Ali's opined limits on climbing, balancing, stooping, kneeling, crouching, and crawling, and working around heights or heavy machinery.

The ALJ cited multiple reasons for rejecting part of Dr. Ali's opinion, including:

> Dr. Ali's observations that the claimant was able to walk into the

9

> exam room without assistance, get on and off the exam table without difficulty, bend to take his shoes off and on without difficulty, perform heel and toe walk, and squat. This also includes Dr. Ali's findings [that the claimant] had full range of motion in his spine and all joints, negative straight leg raises, normal motor strength, intact sensation, and intact deep tendon reflexes. This further includes evidence of the claimant['s] normal range of motion, normal motor strength, and normal gait in the treatment records; the lack of imaging studies of the claimant's spine; evidence that the claimant was not referred to a specialist and was only occasionally treated with pain medication; and the claimant's ability to attend to his personal hygiene independently.[4]

AT 24.

Though plaintiff claims these reasons are legally insufficient, the undersigned finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount some of the physical limitations opined by Dr. Ali. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1176 (9th Cir. 2008) (ALJ did not err in discrediting claimant's testimony when the alleged severity of her symptoms was "disproportionate and not supported by the objective medical findings nor any other corroborating evidence" and the record reflected claimant performed "normal activities of daily living").

C. Credibility

Lastly, plaintiff argues that the ALJ erred in finding plaintiff less than fully credible, though the ALJ factored plaintiff's subjective testimony into the RFC to some degree. See AT 19-20 (based on plaintiff's reported difficulties, ALJ found him mildly restricted in daily activities and moderately limited in social functioning and concentration, persistence, or pace); AT 24 ("I find medium exertional work accommodates the claimant's subjective complaints.").

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

---

[4] The court notes that plaintiff's ability to attend to his own hygiene is the weakest of the cited reasons, as this factor does not relate to the rejected limitations proposed by Dr. Ali.

supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. <u>See</u> <u>id.</u> at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see</u> generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. <u>Light v. Social Security Administration</u>, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. <u>See</u> <u>Flaten v. Secretary of HHS</u>, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, <u>see</u> <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. <u>Marcia v. Sullivan</u>, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found that "there exist good reasons for questioning the consistency of claimant's subjective complaints with the objective evidence." AT 26. The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effect of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" AT 23.

The ALJ cited the following reasons: First, plaintiff's described daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and

11

limitations." AT 23. Second, "despite the claimant's allegations of disabling back pain, the treatment records reflect overall unremarkable clinical findings, including full range of motion and normal gait, and only occasional treatment with pain medication." AT 23. The ALJ also cited a lack of imaging studies to evaluate plaintiff's back pain and "very limited treatment from mental health professionals." AT 23.

As to plaintiff's subjective statements concerning mental impairment, the ALJ found that "based on the claimant's subjective symptoms to his providers and the objective evidence, psychotropic medication treatment was overall effective in managing the claimant's symptoms." AT 23. Elsewhere in the decision, the ALJ noted plaintiff's "overall unremarkable mental status findings following medication treatment." AT 26. The ALJ explained that she gave "more weight to the objective details and chronology of the record, which more accurately describe the claimant's impairments and limitations." AT 26.

Based on a review of the record as discussed above, the undersigned finds that the ALJ used the proper process and provided proper reasons, supported by substantial evidence, for the adverse credibility determination. Thus the court defers to the ALJ's discretion on this issue.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3. Judgment is entered for the Commissioner.

Dated: March 4, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/fideldy2668.ssi.ckd

12